IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-HC-2165-F

CARL EDWARD LYONS,                    )
                                      )
            Petitioner,               )
                                      )
        v.                            )                    ORDER
                                      )
JOYCE KORNEGAY, Admin.,               )
Warren Correctional Inst.,            )
                                      )
            Respondent.

Carl Edward Lyons, a state prisoner proceeding *pro se*, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent Joyce Kornegay filed a motion to dismiss [D.E. # 7] the petition before requiring a full response to the merits of petitioner's claims. Petitioner has filed a response [D.E. # 12, 14] to the motion to dismiss. For the following reasons, the court grants-in-part and denies-in-part respondent's motion to dismiss.

## STATEMENT OF THE CASE

On September 23, 2002, in the Superior Court of Wake County, petitioner was convicted based upon his plea pursuant to North Carolina v. Alford, 400 U.S. 25, 37 (1970), on one count of first-degree forcible sex offense and one count of first-degree kidnaping. Pet [D.E. # 1] 1. At sentencing, the trial judge found that petitioner took advantage of a position of trust or confidence in committing the crime and therefore applied North Carolina's statutory aggravating factor at N.C. Gen. Stat. § 15A-1340.16(d)(15) (2003) in sentencing petitioner to 360-441 months' imprisonment. Petitioner's conviction was affirmed on direct appeal to the North Carolina Court of Appeals. State

v. Lyons, 162 N.C.App. 722, 592 S.E.2d 294 (N.C. App. Feb. 17, 2004) (unpublished table decision). Petitioner filed both a notice of appeal and a petition for discretionary review of the Court of Appeals' decision, both of which were denied by order of the Supreme Court of North Carolina. State v. Lyons, 358 N.C. 239, 595 S.E.2d 694 (N.C. April 1, 2004).

After petitioner unsuccessfully pursued postconviction relief in the state courts, he filed a petition for writ of habeas corpus in this court on October 12, 2004. On September 7, 2005, the Honorable Malcolm J. Howard, United States District Judge, entered an order dismissing the petition. On September 11, 2007, the United States Court of Appeals for the Fourth Circuit reversed, finding that the trial court sentenced petitioner in violation of Blakely v. Washington, 542 U.S. 296 (2004). Lyons v. Weisner, 247 F. App'x 440, 447 (4th Cir. 2007) (unpublished decision). Accordingly, on remand Judge Howard entered an order directing that, if the state failed to resentence petitioner within 120 days, a writ of habeas corpus would issue.

On January 4, 2008, petitioner was resentenced in the Wake County Superior Court to a term of 288 to 355 months' imprisonment. Petitioner gave notice of his appeal at sentencing. However, because the sentence was within the presumptive sentencing range for petitioner's conviction, the trial court found that petitioner had no right to appeal the sentence pursuant to his plea agreement and therefore dismissed the notice of appeal. Petitioner sought certiorari review in the Court of Appeals, which was denied on September 25, 2008. Order, Resp.'s Supp. Mem. ex. 9 [D.E. # 8-10].

Prior to his resentencing and continuing throughout the pendency of his petition for writ of certiorari review of his sentence and beyond, petitioner filed a number of *pro se* motions in the state courts. These motions were filed in all levels of the state courts and sought relief in various forms, including motions to dismiss for purported lack of jurisdiction, motions for transcripts, petitions for

2

mandamus to the appellate courts, etc. To the extent any of these motions are relevant to the court's analysis in disposing of the motion to dismiss, the court will address the motions below.

On August 13, 2011, at the earliest, petitioner filed the instant petition in this court. The petition sets forth the following claims:

a)  Ground One - petitioner's conviction on the first degree forcible sexual offense charge violates his constitutional protection against double jeopardy and therefore constitutes a violation of his rights to due process and equal protection, and is a "jurisdictional defect";

b)  Ground Two - petitioner's plea was "modified" after it was accepted, resulting in a "breach" of the plea agreement which violated petitioner's due process rights and is a "jurisdictional violation";

c)  Ground Three - that petitioner's "right to file writ of habeas corpus has been denied," in violation of his due process and equal protection rights, by the various state courts' purported failures to make "any findings of fact to support [their] conclusion[s] of law"; and

d)  Ground Four - that petitioner received the ineffective assistance of counsel due to his counsel's failures to 1) "object to aggravating factor," 2) assert the "breach of contract" described in ground two of the petition, 3) object to the purported double jeopardy violation described in ground one of the petition, 4) assert the "trial court's 'legal duty' under N.C.G.S. 15A-1024," and 5) assert the "jurisdictional defect."

Pet. 5-10. On October 11, 2011, respondent filed her motion to dismiss [D.E. # 7], along with a supporting memorandum and exhibits [D.E. # 8]. In the motion, respondent argues that all of petitioner's claims, excluding ground three, should be dismissed on alternative theories that they are either barred as second or successive claims which have not been authorized by the Court of Appeals, in violation of 28 U.S.C. § 2244(b), or barred by the applicable statute of limitations in § 2244(d)(1). Resp.'s Mot. to Dis. [D.E. # 7] 1-2. Respondent also contends that, to the extent petitioner's third claim, concerning the purported denial of his "right to file writ of habeas corpus" in the state courts is not second or successive or time-barred, it is not cognizable as a ground for

3

relief under § 2254. Id. at 2. On October 27, 2011, petitioner filed his response [D.E. # 12] to the motion to dismiss and on November 7, 2011, filed an "addendum" [D.E. # 14] to his response. These matters are ripe for ruling.

## DISCUSSION

I.    The prohibition on second or successive habeas claims.

Respondent first claims that petitioner's claims set forth in ground one and two of his ineffective assistance sub-claims in ground four are barred because they are "second or successive" and petitioner has not demonstrated that he has obtained authorization from a three-judge panel of the Fourth Circuit to file such claims. Resp.'s Mem. [D.E. # 8] 7-8. In pertinent part, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

> imposes the following limits on review of successive § 2254 applications:
>
> (1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> In addition, § 2244(b)(3)(A) provides that a successive application may not be filed in the district court without authorization from the relevant court of appeals.

4

> "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C.A. § 2244(b)(3)(C).

In re Williams, 330 F.3d 277, 279 (4th Cir. 2003). Respondent reasons that ground one and two of the sub-claims of ground four are second or successive because they "do not challenge Petitioner's resentencing judgment but [rather] his underlying conviction that he challenged [in] his first § 2254 petition filed on October 12, 2004." Resp.'s Mem. 7.

In Magwood v. Patterson, 130 S.Ct. 2788, 2793-94 (2010), the capital habeas petitioner successfully prosecuted an initial habeas petition which resulted in his obtaining a resentencing in state court. After he was again sentenced to death, the petitioner filed a second habeas petition arguing "that his sentence was unconstitutional because he did not have fair warning at the time of his offense that his conduct would be sufficient to warrant a death sentence . . . ." Id. at 2794. The respondents argued, and the intermediate court of appeals held, that the petitioner's "fair warning" claim was second or successive because it challenged a part "'of the original sentence that was not amended.'" Id. at 2795 (quoting Magwood v. Cullilver, 555 F.3d 968, 975 (11th Cir. 2009)). The Supreme Court reversed, holding that a claim is not "second or successive" merely because a habeas petitioner had a prior opportunity to litigate the claim in a prior habeas petition. Id. at 2798-99. Instead, where a habeas claim is included in a "*first* application challenging [an] . . . intervening judgment" and alleges "*new*" errors, the claim is not "second or successive. Id. at 2801 (emphasis in original); id. ("It is obvious to us–and the State does not dispute–that his claim of ineffective assistance at resentencing turns upon new errors. But, according to the State, his fair-warning claim

5

does not, because the state court made the same mistake before. We disagree. An error made a second time is still a new error.").

Respondent distinguishes Magwood because in this case "Petitioner seeks to challenge both his underlying conviction and his resentencing." Resp.'s Mem. 9 (emphasis in original). Indeed, respondent argues, Magwood expressly declined to consider whether § 2244(b) allows "a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, *new* sentence, but also his original, *undisturbed* conviction." Magwood, 130 S.Ct. at 2802. Thus, respondent asserts, Magwood "left intact circuit president [sic] determining whether a subsequent § 2254 challenging the underlying conviction should be dismissed as second or successive, where there was an intervening new judgment entered." Resp.'s Mem. 8. However, numerous circuit courts have concluded, after Magwood, that "the latter of two petitions is not 'second or successive' if there is a 'new judgment intervening between the two habeas petitions.'" Wentzell v. Neven, 674 F.3d 1124, 1127 (9th Cir. 2012); Johnson v. United States, 623 F.3d 41, 46 (2d Cir. 2010) ("It follows that, where a first habeas petition results in an amended judgment, a subsequent petition is not successive regardless of whether it challenges the conviction, the sentence, or both."). See also In re Lampton, 667 F.3d 585, 588 (5th Cir. 2012) ("Whether a new judgment has intervened between two habeas petitions, such that the second petition can be filed without this Court's permission, depends on whether a new sentence has been imposed.").

These courts have reached this conclusion largely based upon the recognition that "[i]n light of Magwood, we must interpret successive applications with respect to the judgment challenged and not with respect to particular components of that judgment." Johnson, 623 F.3d at 46. Thus, because courts must "treat the judgment of conviction as one unit, rather than separately considering

6

the judgment's components, *i.e.*, treating the conviction and sentence for each count separately[,]" where a new sentence is given, the resulting judgment is itself new. Wentzell, 674 F.3d at 1127-28. See also Campbell v. Sec'y for Dept. Of Corr., 447 F. App'x 25, 27 (11th Cir. 2011) (unpublished decision) (quotations and citations omitted) ("we have ruled that both the writ and AEDPA are focused on the judgment which holds the petitioner in confinement . . . . Specifically, the judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the petitioner's current detention.").

Respondent does not argue that petitioner did not receive a new sentence and a corresponding new judgment. Nor does respondent cite any authority, post-Magwood, for her position that any of petitioner's current claims are "second or successive" merely because they arguably relate to his conviction rather than just his resentencing. While respondent understandably distinguishes Magwood and relies upon pre-Magwood authority and dicta to support her argument, given the relative imbalance of authority on this issue subsequent to Magwood, the court is inclined to reject respondent's argument. Accordingly, the court finds that, at this time, none of petitioner's claims are barred as second or successive pursuant to § 2244(b)(2).[1]

II.     The timeliness of the petition.

Pursuant to the AEDPA, a person in custody pursuant to the judgment of a state court must file a petition for a writ of habeas corpus within one year of one of four applicable triggering events. 28 U.S.C. § 2244 (d)(1). The limitation period begins to run from the latest of:

---

[1]     This finding does not foreclose respondent's assertion of other potentially dispositive defenses to petitioner's claims. As some circuit courts of appeals have recognized, the "Supreme Court's discussion in Magwood indicates that procedural default rules–rather than the rules governing 'second or successive' petitions–are the more appropriate tools for sorting out new claims from the old." Wentzell, 674 F.3d at 1127.

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Pursuant to § 2244(d)(2), the limitations period may be tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." In pertinent part, the Fourth Circuit has elaborated on the parameters of this statutory tolling provision as follows:

> We have held that "the term 'collateral review' refers to a proceeding separate and distinct from that in which the original judgment was rendered, and in which the petitioner challenges the legality of the original judgment." Walkowiak v. Haines, 272 F.3d 234, 237 (4th Cir. 2001). The Supreme Court has explained that an application for collateral review "is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). Filing rules include "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id. The Supreme Court has distinguished these filing rules, or "condition[s] to filing," from a separate category of "condition[s] to obtaining relief," which includes procedural bars that prevent certain claims from being raised or considered. Id. at 10–11. With respect to the latter category, the Court has rejected the argument that an application for relief was not "properly filed" simply because the claims it advanced were procedurally barred. As the Court explained, "the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." 531 U.S. at 9; see also Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) (noting that there is an "obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the

8

type of 'rule of decision' procedural bars at issue in <u>Artuz</u>, which go to the ability to obtain relief.")

<u>Harris v. Dir., Virginia Dept. of Corr.</u>, 282 F. App'x 239, 241 (4th Cir. 2008) (unpublished decision). An application for post-conviction review is pending from "initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review) . . . ." <u>Taylor v. Lee</u>, 186 F.3d 557, 561 (4th Cir. 1999).

Respondent argues that, even generously calculating the running of the limitations period in petitioner's favor in several instances, his petition is time-barred. This is so, according to respondent, because, although petitioner has filed numerous pleadings seeking relief in the state courts since his resentencing, many of these pleadings either were not "properly filed" applications for post-conviction relief or were filed after the running of the limitations period and therefore could not statutorily toll the limitations period. Resp.'s Mem. 12-16.

Considering the substance of petitioner's claims and other allegations in the petition, there is no viable basis for assessing the timeliness of the petition other than § 2244(d)(1)(A), which triggers the running of the one-year limitation period when the underlying conviction becomes final. Petitioner's conviction became final for purposes of § 2244(d)(1)(A) "upon the conclusion of direct review or the expiration of the time for seeking such review." In this instance, petitioner was resentenced on January 4, 2008. Judgment on Resentencing, Resp.'s Mem. ex. 6 [D.E. # 8-7]. Respondent contends that the conviction arguably became "final" for purposes of the AEDPA when the state court dismissed petitioner's notice of appeal that same day. <u>See</u> Resp.'s Mem. 11; <u>id.</u> at ex. 7 (Jan. 4, 2008, Order Dismissing Notice of Appeal). Nevertheless, respondent concedes that, given the trial court's instruction to petitioner that he file a petition for certiorari in order to obtain review

9

of his sentence, petitioner should be credited with the time during which the certiorari petition eventually filed was pending before the North Carolina Court of Appeals. Thus, even though the petition was not filed until eight months later, petitioner's conviction is not deemed "final" for AEDPA purposes until September 25, 2008, when the petition was denied by the Court of Appeals. See Order, Resp.'s Mem. ex. 9 [D.E. # 8-10].

Respondent further contends that, due to petitioner's concurrent filings seeking a "a type of post-conviction relief in the North Carolina Superior Court . . ., the statute of limitations began tolling immediately after the denial of [the] certiorari petition . . . on September 25, 2008." Resp.'s Mem. 12. At this point, matters become somewhat murkier due to the volume of pleadings petitioner filed in the state courts, the nature of relief he sought in such pleadings, the cognizability of those pleadings pursuant to state law, and the intersection of those concerns with the tolling principles implementing § 2244(d)(2). Respondent "generously" figures that statutory tolling continued until February 23, 2009, when the North Carolina Court of Appeals denied a petition for certiorari review filed by petitioner in which he sought review of a Superior Court order "dismissing a motion for a stenographic transcript." Resp.'s Mem. 4 n.1. Thereafter, respondent contends, petitioner's various filings were generally so frivolous and non-compliant with state law that the state courts summarily dismissed the pleadings, often refusing even to docket his various petitions for certiorari and mandamus, and that, therefore, they were not "properly filed" applications for post-conviction relief capable of tolling the federal limitations period. Id. at 13-15. Ultimately, respondent argues, assuming that tolling of the limitations period ceased on February 23, 2009, petitioner had until February 23, 2010, in which to file his federal petition. Because petitioner did not file his petition until August 13, 2011, respondent concludes, "the petition is nearly one year and

10

a half late, and grounds (1), (2), and (4) must be dismissed as untimely." Id. at 15. Respondent

further contends that petitioner's filing of another barrage of post-conviction motions and petitions

in the state courts starting around September 7, 2010, does not affect the tolling analysis because

such motions were filed after the limitations period had already expired. Id. at 16.

Petitioner fails to offer a cogent rebuttal to respondent's statute of limitations argument.

Under the heading "All Petitioner's Filings Toll the Statute of Limitations," petitioner argues that

"[p]ursuant to the mailbox rule ("clearly established federal law") prisoner's documents are

considered to be filed when placed in the hands of prison officials to be mailed. . . . Any ruling

contrary to the mailbox is in violation of "clearly established federal law." Pet'r's Resp. [D.E. # 12]

5. Of course, petitioner's argument in this regard is unavailing–the "properly filed" requirement of

§ 2244(d)(2) and the "mailbox rule" espoused in Houston v. Lack, 487 U.S. 266 (1988), are

concerned with entirely different matters. The former necessarily inquires into whether a particular

filing complies with state law and satisfies the applicable "conditions to filing" such that it tolls the

federal limitations period. The latter is only concerned with not unduly subjecting an inmate to the

vagaries of prison mail rooms or postal service inefficiencies by construing the date of filing of a

prisoner's document as the date the inmate "delivered it to the prison authorities for forwarding to

the court clerk." Houston, 487 U.S. at 276. In other words, it is immaterial when petitioner might

have delivered any of his various filings to prison authorities for mailing if those filings were never

"properly filed" under state law for purposes of § 2244(d)(2) tolling. Petitioner also argues that

"[s]ince the second petition is not successive, the one year limitation under the (AEDPA) simply

does not apply." Pet'r's Resp. 6. Of course, this argument is plainly without merit, as § 2244(d)(1)

11

announces a one-year limitation applicable to all habeas petitions, regardless of whether it is first or second or successive.

Petitioner's better argument, that "Respondent's calculations don't apply or are at best uncertain," Pet'r's Resp. 5, is, unfortunately, wholly underdeveloped. Petitioner fails to cite to even one filing by him during the relevant time period, February 23, 2009, through February 23, 2010, which should operate to toll the statute of limitations. However, petitioner's failure to alert the court to any such filings, at this early stage of the proceedings, should not prove fatal to his case. Ultimately, it is respondent's burden to plead and prove her affirmative defense that the petition is untimely. See Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002) (holding that habeas statute of limitations is non-jurisdictional affirmative defense); McNeill v. Polk, 476 F.3d 206, 220 n.3 (4th Cir. 2007) ("And, as a settled general rule, the burden of proving an affirmative defense is on the party asserting it."). Although respondent admirably endeavors to inform the court about petitioner's myriad state court filings and the treatment of those filings in the state courts, see Resp.'s Mem. 3-6, this court is left with insufficient information about the content of several of these filings in order to resolve the statutory tolling issue at this time.

It is clear that this court's inquiry into whether a given state court filing suffices for tolling purposes under § 2244(d)(2) may require more than a cursory examination of a state court's order disposing of the filing. Yet, for the most part, this is all respondent has afforded the court in arguing her statute of limitations defense. See Resp. Mem., exs. 7, 9-15, 17-19, and 21-23. As discussed above, this court must determine whether a given filing "qualifies as an application for collateral review [in that] it initiated a 'separate and distinct proceeding' and sought to challenge the validity of the underlying conviction." Harris, 282 F. App'x at 241 (quoting Walkowiak, 272 F.3d at 237).

12

Further, this court must determine whether the filing "was also 'properly filed' [meaning] it complied with the 'applicable laws and rules governing filing' in that it was timely, formatted in an acceptable manner, and filed in a court with jurisdiction to consider the petition (even if it lacked jurisdiction to grant the relief requested."). Id. at 241-42 (citing Artuz, 531 U.S. at 8). Importantly, a state court filing may still "qualify as a 'properly filed application' for collateral review even if the claims contained in the petition lack merit due to a state procedural bar." Id. at 242. That is, where a state procedural bar results in the dismissal of an "application for collateral review" because the bar functions as a "condition to obtaining relief," rather than as a "condition to filing," the state court filing may still operate to toll the habeas statute of limitations. Id. at 243. Hence, while Congress did not intend for the tolling mechanism of § 2244(d)(2) "'to be triggered simply because a prisoner mailed nonsense to a state court,'" id. (quoting Sibley v. Culliver, 377 F.3d 1196, 1201 (11th Cir. 2004)), at times this court may be required to do more than rest upon respondent's, or even the state court's, characterization of petitioner's various filings.

    With these principles in mind, the court turns to consideration of the filings at issue in this case. In general, despite respondent's seemingly thorough recital of petitioner's myriad state court filings, see Resp.'s Supp. Mem. 3-6, the court is troubled by respondent's equivocal descriptions of petitioner's various motions in other portions of her brief. See id. at 12 (remarking that "it is difficult to discern exactly when Petitioner's statute of limitations ceased tolling" and arguing that "some of the post-conviction documents . . . were not properly filed"). The court sympathizes that respondent's difficulties in calculating the running of the limitations period in this case are no fault of respondent's. Yet, as the party raising this affirmative defense, respondent must shoulder this load. More troubling, respondent's imprecise, generic descriptions of petitioner's "documents"

13

and/or "proceedings" carries over into her discussion about the time during which, she argues, statutory tolling had ceased. See id. at 13 ("Notably, Petitioner continued to file documents and/or had proceedings pending in both the North Carolina Court of Appeals and the North Carolina Supreme Court over the next year. However, the majority of those documents and proceedings did not tolled [sic] the statute of limitations."). In sum, given respondent's repeated references to unspecified or unclear "documents" and pending "proceedings" in the argument portion of her brief, the court has no way of knowing if respondent's more detailed description of petitioner' filings in the "Summary" portion of the brief actually encompasses all of the various filings of petitioner's which could toll the statute of limitations.

Moving from the general to the specific, the court is particularly concerned with those filings which respondent describes as a December 2, 2008, "notice of appeal in the Supreme Court of North Carolina," and a January 20, 2009, "motion 'for No-Answer Default Judgment.'" Id. at 13. These documents are central to this court's analysis because, if they pass muster for purposes of § 2244(d)(2), they would extend petitioner's statutory tolling window until October 8, 2009, nearly six months beyond that which respondent "generously" concedes in her brief. In that circumstance, tolling would extend to within a year of petitioner's filing in the Superior Court, in September of 2010, of additional documents which were construed as new motions for appropriate relief. Respondent presently argues that those 2010 documents do not affect the statute of limitations analysis because they were filed after the limitations period had expired. However, if the statute of limitations was tolled until October of 2009, those documents would have been filed before the expiration of the one year period and the 2010 documents would therefore need to be independently examined to determine their own potential tolling effect under § 2244(d)(2).

14

Respondent argues that the specified Supreme Court filings were not "properly filed" because North Carolina law does not permit any "filings seeking review of a trial court rulings [sic] on non-capital MARs and other such post-conviction filings seeking relief" to be filed in the North Carolina Supreme Court. Resp.'s Mem. 13-14. Respondent also asserts that the Supreme Court's "dismissal" of these filings, rather than mere "denial," demonstrates the "impropriety" of the pleadings in that they failed to comply with state procedural law. Id. at 14. As to the former contention, given that the court is unable to review the subject pleadings, the court is unable to judge the accuracy of respondent's characterization of them as "seeking review of a trial court['s] rulings on non-capital MARS and other such post-conviction filings." Id. at 13-14. The court is simply unaware whether petitioner's filings are requests to review the rulings of trial courts or intermediate appellate courts, or if they might be some form of original action. While it is may very well prove true that North Carolina law would preclude the filing of any document in the Supreme Court approximating any one of those forms, it is also clear that North Carolina law does not, and cannot, limit the inherent authority of the North Carolina Supreme Court to exercise its "'jurisdiction to review upon appeal any decision of the courts below.'" State v. Ellis, 361 N.C. 200, 205, 639 S.E.2d 425, 428 (N.C. 2007) (quoting NC. Const. Art. IV, Sec. 12, Cl. 1) (holding that statutes purporting to "preclude our review of Court of Appeals decisions on MARs in noncapital cases" are subordinate to the North Carolina Supreme Court's inherent constitutional supervisory authority). Assuming, therefore, that the North Carolina Supreme Court at a minimum was "a court with jurisdiction to consider" petitioner's filings, the court must determine whether the filings "otherwise complied with the 'applicable laws and rules governing filing' in that it was timely [and] formatted in an acceptable manner." Harris, 282 F. App'x at 241-42. Unfortunately, the court is unable to make this

15

determination, as the actual petitions are not in the record and the Supreme Court orders provided by respondent do not state that Court's bases for dismissing the petitions.

Likewise, the court finds unavailing respondent's argument that the Supreme Court's "dismissal" of the filings, rather than simple "denial," further illustrates their "impropriety" for purposes of § 2244(d)(2). While, pursuant to North Carolina law, a court's "dismissal" may signal some finding that a filing "fails to comply with a rule of procedure," N.C. R. App. P. 20(e), Harris makes clear that mere failure to comply with a state procedural rule resulting in dismissal of the action does not, alone, answer the tolling inquiry of § 2244(d)(2). 282 F. App'x at 242-43. Looking beyond the fact that the filing was dismissed, this court must determine whether the state procedural rule that prompted the dismissal of petitioner's filings operates as a "condition to obtaining relief" or a "condition to filing." Id. While respondent asserts that state procedural rules purporting to preclude the filing of MAR appeals in the North Carolina Supreme Court were the basis for that Court's dismissal of petitioner's filings, the Court's Orders do not actually confirm this and, as Ellis makes clear, those same procedural rules do not circumvent the Supreme Court's inherent authority to exercise review of lower court decisions on non-capital MARs. Ellis, 361 N.C. at 205, 639 S.E.2d at 428. Hence, the court is unable to conclude that any procedural rule purportedly applied by the North Carolina Supreme Court in dismissing petitioner's filings "speaks to ... the petitioner's ability to initiate the proceedings in the first instance" and therefore operates as a "condition to filing" which establishes that the actions were never "properly filed." Harris, 282 F. App'x at 242-43.

For all of the reasons given above, the court finds that, at this time, the record does not support respondent's argument that grounds one, two, and four of the petition are time-barred. Accordingly, respondent's motion to dismiss on that basis is due to be denied without prejudice to

her ability to assert the affirmative defense upon further development of the record in summary judgment proceedings.

III.    The cognizability of Ground Three.

Petitioner's third ground for relief in the petition asserts that his "right to file Writ of Habeas Corpus has been denied violating 14th Amendment Due Process and Equal Protection Clause." Pet. 8. As "Supporting Facts" he alleges as follows:

> Neither the Wake County Superior Court's nor the North Carolina Court of Appeals nor the North Carolina Supreme Court's orders contain any findings of facts to support it's [sic] conclusion of law. Both U.S. and N.C. Constitutions grant prisoners the right to inquire into the restraint on there [sic] liberty without obstruction. A Fundamental Miscarriage of Justice.

Id. Respondent rightly argues that "errors during a state post-conviction proceeding cannot be grounds for relief on federal habeas corpus review." Resp.'s Mem. 21 (citing Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008)). Indeed, as Lawrence makes clear, "[a] state prisoner has no federal constitutional right to post-conviction proceedings in state court. . . . Thus, even where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." 517 F.3d at 717 (citations omitted). Accordingly, the Fourth Circuit was "without power to consider" Lawrence's claims that, inter alia, the state court's adjudication of his MAR violated his due process rights because the state court entered an order summarily denying the MAR which was drafted by the state and which failed to specify the grounds for the denial. Id. Although petitioner asserts that Lawrence "doesn't apply" to his claim, Pet'r's Resp. Mem. 15, he fails to articulate any viable basis for that conclusion. It is clear from the petition that petitioner is challenging the various state courts' perceived derogation

17

of his "right to file Writ of Habeas Corpus." Pet. 8. Such proceedings are inherently collateral in nature and, therefore, any alleged error on the part of the state courts in adjudicating such matters are simply not cognizable as a claim for relief in federal habeas corpus. Lawrence, 517 F.3d at 717. Petitioner's Ground III is due to be dismissed as non-cognizable.

## CONCLUSION

For the reasons stated above, respondent's motion to dismiss [D.E. # 7] the petition [D.E. # 1] is GRANTED-IN-PART and DENIED-IN-PART. Ground III of the petition is DISMISSED. Respondent's Motion to Submit Additional Exhibit and Attached Exhibit [D.E. # 13] is GRANTED. Respondent shall file her answer, or other appropriate pleading, to those portions of the petition not dismissed by this order within thirty (30) days from the date of this order.

SO ORDERED. This the 15th day of August, 2012.

_James C. Fox_
JAMES C. FOX
Senior United States District Judge